UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-828(DSD/SRN)

Ann MacGregor,

Plaintiff,

v. **ORDER**

Mallinckrodt, Inc., a Delaware corporation, Tyco International, Ltd., a Bermuda based corporation, Jerry Mattys, an individual defendant and Hans Stover, an individual defendant,

Defendants.

Steve G. Heikens, Esq. and Heikens Law Office, 700 Lumber Exchange, 10 South Fifth Street, Minneapolis, MN 55402, counsel for plaintiff.

David J. Duddleston, Esq., Natalie Wyatt-Brown, Esq. and Jackson & Lewis, 150 South Fifth Street, Suite 2800, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons stated below, defendants' motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff was employed by defendant Mallinckrodt as one of three Business Segment Directors ("BSDs") in its marketing

FILED 12-30-02
RICHARD D SLETTEN, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

department. Plaintiff was the only female BSD. Plaintiff began her career with Aequitron, a predecessor of Mallinckrodt. Aequitron was purchased by Nellcor Puritan Bennett ("Nellcor"), which was purchased by Mallinckrodt in 1997. Mallinckrodt and its predecessors manufacture and market home health care products.

Plaintiff's duties related to the development of new products and the marketing of new and existing products in the Alternate Care Division, which included products for the treatment and monitoring of sleep-related disorders. During much of her employment, plaintiff received promotions, pay increases, commendations and incentives. Plaintiff successfully managed the development and marketing of several product lines, which were later transferred to other male BSDs. However, plaintiff was paid less than the two male BSDs during most of the relevant time period.

In approximately June, 1998 plaintiff began reporting to defendant Jerry Mattys ("Mattys"), vice president and general manager. In approximately May, 1999, Mattys reorganized the Alternate Care Division, creating the position of vice president of marketing which reported directly to Mattys. At the same time, Mattys reduced the number of employees reporting directly to him from seventeen to nine. At that point several of the employees that formerly reported to Mattys, including plaintiff, began reporting to Hans Stover ("Stover"), who Mattys selected as the new

vice president of marketing. Stover's position was not posted internally. Plaintiff and others were not allowed to apply or interview for the job.

After becoming vice president of marketing, Stover made public and private comments to the effect that there were too many women in the marketing group.[1] Stover developed a plan to restructure the alternate care marketing group. Accordingly, he consolidated two of the BSD positions, including plaintiff's position, into one new director of marketing position. Stover also created a new position entitled director of new market development. Plaintiff applied for the director of marketing position, but David Gast ("Gast"), a male employee from another department, was selected. Stover offered plaintiff the position of director of new market development. A similar position previously existed but had been eliminated after it failed to produce the desired results. Stover and plaintiff began negotiating over the terms of the offer, but negotiations soon broke off.[2] Stover then offered the position to one of plaintiff's male co-workers. Mallinckrodt contends that

---

[1] At one point, Stover instructed Diane Hunt, senior manager of marketing communications, not to hire any more female employees because there were too many women in the marketing group. [Hunt Aff. at ¶ 8.]

[2] Plaintiff and defendants offer differing versions of how negotiations proceeded and ultimately failed. For summary judgment purposes, the court accepts as true the averments of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

plaintiff effectively resigned when she failed to accept Stover's offer, while plaintiff asserts she was, in effect, constructively discharged.

Plaintiff's complaint alleges discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), intentional misrepresentation,[3] breach of contract, breach of the implied covenant of good faith and fair dealing and unjust enrichment. The complaint further alleges that Mattys, in his individual capacity, intentionally interfered with plaintiff's employment contract with Mallinckrodt and that he aided and abetted a violation of the Minnesota Human Rights Act in violation of Minnesota Statutes section 363.03 subdivision 2.

In support of these claims, plaintiff alleges generally that defendants intentionally attempted to create an all-male management structure, barring her equal employment opportunities, that she was paid less than her male counterparts despite being given disproportionately heavier workloads, that she was afforded fewer privileges and incentives leading to career development opportunities than were her male counterparts, that her successful projects were repeatedly taken from her control and given to male

[3] Count III of the complaint, intentional misrepresentation, has been dismissed by stipulation of the parties. [Doc. No. 28.]

co-workers such that they, rather than she, received credit and rewards for her success and finally, that defendants eliminated her position and offered her a less desirable position as a pretext for her elimination from the male-dominated management group.

Defendants deny plaintiff's allegations and respond generally that many of plaintiff's allegations are time-barred, that both male and female-occupied BDS positions were eliminated, that no gender discrimination occurred because plaintiff was initially offered the new position of director of new market development while her male counterpart was terminated, that plaintiff suffered no adverse employment action because the position she was offered was at the same level of responsibility and at a higher salary than the eliminated position and that defendants' actions were based on legitimate, non-discriminatory business decisions.

## DISCUSSION

### I. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**a. Count I: Title VII Gender Discrimination**

In Count I of her complaint, plaintiff alleges that defendants' conduct constituted differential and adverse treatment based on gender, in violation of Title VII of the Civil Rights Act

of 1964 as amended, 42 U.S.C. § 2000e.[4] The statute prohibits discrimination "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Discriminatory employment practices are established when a party "demonstrates that race, color, religion, sex, or national origin was motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

A defendant's motion for summary judgment on a Title VII gender discrimination claim must be analyzed under either the "shifting burdens" framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), or the "mixed motive" test established in Price Waterhouse v. Hopkins, 490 U.S. 228, 244-45 (1989). See Gagnon v. Sprint Corp., 284 F.3d 839, 847-48 (8th Cir. 2002) (rehearing and rehearing en banc denied); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1322-23 (8th Cir. 1994).

Under the "shifting burdens" analysis, the initial burden lies with the employee to establish a prima facie showing of discrimination. See McLaughlin, 50 F.3d at 510. A prima facie

[4] Count I also claims coverage under the damages provisions of 42 U.S.C. § 1981a.

case for employment discrimination is made when a plaintiff demonstrates that she is a member of a class of persons protected by Title VII, that she was qualified for the employment, that she was displaced or suffered other adverse employment treatment in spite of her qualifications and that the adverse employment actions occurred under circumstances from which the court could infer unlawful discrimination. See id. In the context of a summary judgment motion, a plaintiff may not rely solely on the pleadings, but must bring forth specific, admissible evidence of each element of the prima facie case. See Celotex, 477 U.S. at 322-23. Nonetheless, the prima facie showing is not a high burden. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Johnson v. Arkansas State Police, 10 F.3d 547, 551 (8th Cir. 1993).

If a plaintiff successfully makes the prima facie showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory justification for the adverse action. See McDonnell Douglas, 411 U.S. at 802. While the defendant need not prove that it was actually motivated by the proffered reason, it must set forth, through admissible evidence, a reason or reasons that are legally sufficient to entitle defendant to a judgment. See Burdine, 450 U.S. at 254-55. The explanation must be sufficiently clear that the plaintiff has a full and fair opportunity to demonstrate pretext. See id. at 255-56. Nonetheless, courts must

afford employers latitude to manage their businesses as they see fit. See McLaughlin, 50 F.3d at 511-12. Thus, the court is not to question the wisdom of an employer's decision, but rather only its motivation. See id.; Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999).

If the defendant employer offers a non-discriminatory basis for the adverse action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's reason was a pretext to disguise an impermissible motive. See McDonnell Douglas, 411 U.S. at 802; McLaughlin, 50 F.3d at 510. The plaintiff may either show that the alleged discriminatory reason is more likely the true motivation behind the adverse conduct, or alternatively, that the defendant's justification is simply not credible. See Burdine, 450 U.S. at 256. However, a showing of pretext alone may not suffice to overcome a defendant's summary judgment motion. A plaintiff must show that when all the evidence is considered, gender bias is more likely than not a motivating factor for the defendant's actions. See Rothmeier v. Investment Advisors, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996).

Alternatively, in cases where the plaintiff offers direct evidence of discriminatory animus, the court may apply the Price Waterhouse "mixed-motive" analysis. See Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989); Gagnon v. Sprint Corp., 284 F.3d 839, 847 (8th Cir. 2002) (rehearing and rehearing en banc denied).

Under this analysis, the plaintiff must present evidence that persons directly involved in the decision-making process had a discriminatory attitude that was more likely than not a motivating factor in the adverse conduct. See Yates v. McDonnell Douglas, 255 F.3d 546, 548-49 (8th Cir. 2001). However, the Yates court cautioned that "'[n]ot all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support' an inference of [unlawful] discrimination." Id. at 549 (quoting Simmons v. Oce-U.S.A., Inc., 174 F.3d 913, 915 (8th Cir. 1999)). Direct evidence must be reflective of discriminatory attitudes held by those involved closely enough in the decision-making process that the court can infer that the discriminatory attitude actually influenced the decision. See id. (citing Rivers-Frison v. Southeast Missouri Community Treatment Center, 133 F.3d 616, 619 (8th Cir. 1998)). The court also noted that "[d]irect evidence of ... discrimination is not established by mere 'stray remarks in the workplace, statements by non-decision-makers, or statements by decision-makers unrelated to the decisional process itself.'" Id. (quoting Beshears v. Asbill, 930 F.2d 1348, 1353 (8th Cir. 1991)).

If the plaintiff demonstrates direct evidence of discriminatory bias, "the burden shifts to the defendant to prove that the employment decision would nevertheless have been made for legitimate, non-discriminatory reasons." Id. (citing Price

Waterhouse, 490 U.S. at 258). In this case, plaintiff has provided both direct and circumstantial evidence of employment discrimination. The court finds that defendants' motion for summary judgment on Count I of the Complaint would fail under either the "mixed motive" test or the "shifting burdens" test.

**1. "Mixed Motive" Analysis**

Plaintiff has presented sufficient direct evidence of gender animus to survive defendants' summary judgment motion under the "mixed motive" analysis. Defendants do not dispute that Stover stated that there were too many women in the marketing department. Evidence indicates that Stover instructed a marketing manager not to hire any more women in the marketing department for that reason. [Hunt Aff. at § 8.] Stover and defendant Mattys were directly involved in the decision-making process at relevant times. It may reasonably be inferred from Stover's statement and his instruction that no additional women be hired, together with Mattys' vision of Mallinckrodt as "a predominantly male centered company," that defendants' actions were more likely than not the result of unlawful gender bias. These actions include paying less to similarly-situated female BSDs, transferring successful projects from a female BSD to her male counterparts, reducing the number of female employees reporting directly to Mattys, refusing to allow plaintiff to apply for the vice president of marketing position, refusing to permit plaintiff to participate on the site leadership

council, hiring a less qualified male for the director of marketing position, eliminating plaintiff's position, offering plaintiff a new position that had been a dead-end in the past and abandoning negotiations with plaintiff pertaining to that offer.[5] Defendants have not presented evidence that these events would have occurred regardless of any gender bias. For that reason alone defendants are not entitled to judgment as a matter of law. Summary judgment is therefore inappropriate. See Yates, 255 F.3d at 548.

**2. "Shifting Burdens" Analysis**

Alternatively, even if the court found plaintiff's direct evidence of discrimination insufficient, she would nonetheless overcome defendants' motion under the "shifting burdens" test. Plaintiff has presented evidence that she is a member of a protected class, that she was qualified for the positions she held with defendant Mallinckrodt and its predecessors, that she was

---

[5] Questions of fact exist as to whether and under what circumstances these events occurred and whether they are sufficiently adverse under Title VII. "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage" or "significantly affect[s] an employee's future career prospects." Spears v. Missouri Dept. of Corrections and Human Resources, 210 F.3d 850, 853 (8th Cir. 2000)(rehearing and rehearing en banc denied). The question of adverse employment action is ultimately a fact question for the jury. See Dans v. City of Sioux City, 115 F.3d 1365, 1369 (8th Cir. 1997)(upholding jury award where employer, after eliminating the employee's position, gave the employee a pay increase and reassigned the employee to another position, because jury could reasonably have found that the new job was less desirable and afforded less opportunity for advancement).

treated less favorably than similarly situated male employees[6] and was displaced from that employment under circumstances from which unlawful discrimination might reasonably be inferred.[7] See McLaughlin, 50 F.3d at 510. The court finds that plaintiff has met her burden by making the necessary prima facie showing.

Therefore, to prevail on their motion for summary judgment, defendants must offer non-discriminatory reasons for their actions. If defendants proffer legitimate reasons for their actions, "the rule in [the Eighth] Circuit is that an [employment] discrimination plaintiff can avoid summary judgment only if the evidence *considered in its entirety* (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [protected status] was a determinative factor in the adverse employment decision." Rothmeier v. Investment Advisors, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996)(emphasis added).

Defendants offer non-discriminatory reasons for several of their actions, some of which the court finds unpersuasive. For example, defendants' proffered reasons for differences in pay

---

[6] See infra, n. 5.

[7] The facts from which an inference of unlawful discrimination may be drawn must be determined on a review of "all the facts and circumstances." Lowry v. Hazelwood School, 244 F.3d 654, 659 (8th Cir. 2001). The inference is often made when the plaintiff shows she was treated less favorably than similarly-situated non-protected individuals. See Wallin v. Minn. Dept. of Corrections, 153 F.3d 681, 687 (8th Cir. 1998).

between male and female BSDs are inconsistent. In one instance, the difference is based on revenue. In the other, defendant asserts that the male BSD was actually a "Senior" BSD. The significance of that distinction is dubious, since for some period of time, the "Senior" BSD reported to plaintiff, his theoretical junior. Further, where defendants contend that the difference is based on revenue, the product creating the largest difference was taken from plaintiff and given to her male coworker. Similarly, defendants' rationale for assigning plaintiff fewer project managers does not jibe with the facts. While defendants argue that plaintiff had a clinical manager assigned to her while she worked on the Breeze project, Stover acknowledged that a clinical manager is not the same as a product manager. [Dep. of Stover at 29-31.] Further, if, as defendants suggest, support staff were related to project revenue, BSD David Baker would have had the fewest rather than the largest number of product managers. These inconsistencies raise a sufficient inference of pretext and gender bias to overcome defendants' summary judgment motion. See Rose v. NME Hospitals, Inc., 133 F.3d 1104, 1108 (8th Cir. 1998)(holding that pretext may be proven "by showing the employer's explanation unworthy of credence").

After carefully reviewing the record in the light most favorable to the non-moving party, as is required under Fed. R. Civ. P. 56, the court finds sufficient evidence to conclude that

some of defendants' actions were adverse to plaintiff, that plaintiff has shown that defendants' proffered reasons for some of those actions may be pretextual and that direct and circumstantial evidence supports a reasonable inference that gender bias was more likely than not a motivating factor for defendants' actions. Summary judgment is therefore inappropriate and defendants' motion is denied as to Count I. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**b. Count II: Title VII Retaliation**

Title VII makes it unlawful for any employer to retaliate or discriminate against any employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter ...." 42 U.S.C. § 2000e-3(a). On a motion for summary judgment, the court reviews Title VII retaliation claims under the McDonnell Douglas "shifting burdens" framework. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135-36 (8th Cir. 1999). A plaintiff must make a prima facie showing of retaliatory employment practices, demonstrating: "(1) statutorily protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." Kunferman v. Ford Motor Co., 112 F.3d 962, 965 (8th Cir. 1997)(rehearing and rehearing en banc denied)(applying McDonnell Douglas analysis to a retaliation claim under the Minnesota Human Rights Act). The burden then shifts to the defendant to produce evidence of non-retaliatory motives for

the adverse action. See Kiel, 169 F.3d at 1134-35. The plaintiff must then provide evidence that the defendant's proffered justification is a pretext and that defendant's acts were retaliation for protected conduct. See id.

Here, plaintiff expressed her concerns about the limited number of women in management positions, the transfer of her successful product lines to male co-workers and the fact that she had fewer support personnel to Tina Cronin, director of human resources. [Dep. of Cronin at 38, 42-43.] She also complained about Stover's comment that there were too many women in the marketing department. [Id. at 26.]

Assuming, without deciding, that these complaints rose to the level of protected conduct and that adverse action followed, plaintiff nonetheless fails to show the causal connection required to make the prima facie case. Plaintiff identifies four purportedly retaliatory actions, all of which occurred after Stover became vice president of marketing.[8] However, there is no evidence

---

[8] Plaintiff identifies the following as adverse actions caused by her objections:

a. Elimination of TWO jobs while creating TWO jobs;
b. Plaintiff's removal from BREEZE;
c. 'Creation' of new job different in pay and scope from female to male; and
d. Termination without negotiation about job.

Pl.'s Mem. in Opp'n to Defs.' Mot. for Summary Judgment at 22.

that Stover was aware of plaintiff's complaints. Therefore, his actions cannot be said to have been caused by the complaints. See Kiel, 169 F.3d at 1136.

Attempting to salvage the claim, plaintiff argues that the causal connection is evidenced by the relatively short time period between her complaints and the adverse actions.[9] However, temporal proximity, without more, is generally insufficient to show the requisite causal connection. See id.; see also Gagnon v. Sprint Corp., 284 F.3d 839, 850-52 (8th Cir. 2002) (holding that one month gap between filing of EEOC claim and written reprimand was insufficient evidence of a causal connection). Because the court finds that plaintiff has failed to present evidence that would allow a reasonable jury to find a causal connection between protected conduct and retaliatory employment practices, summary judgment is appropriate and defendants' motion is granted as to Count II.

**c. Counts IV & V: Breach of Contract and Related Covenants**

While admitting that her employment was originally at-will, plaintiff claims it became a contractual relationship because Mattys informed employees that they would be terminated only for cause. She buttresses that theory by noting Stover's belief that termination was limited to cause. Under Minnesota law, whether

---

[9] It is not clear when each complaint was made, but granting plaintiff, as the non-moving party, every benefit of doubt, the court nonetheless finds the causal connection lacking.

statements such as that made by Mattys are sufficient to constitute an offer of a unilateral contract is a question of law.[10] See Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 740 (Minn. 2000). On similar facts, the Minnesota Supreme Court held that such statements alone did not change an at-will employment arrangement into an employment contract. See Cedarstrand v. Lutheran Brotherhood, 117 N.W.2d 213, 221-22 (Minn. 1962). Therefore, the court finds that there was no employment contract between plaintiff and Mallinckrodt. Absent a contract there can be no breach. Similarly, Minnesota has not imposed a good faith requirement upon at-will employment arrangements. See Hunt v. Mid America Employees Federal Credit Union, 384 N.W.2d 853, 858 (Minn. 1986). In an at-will arrangement, either party may terminate the relationship at any time, for any reason not prohibited by law. See Martens, 616 N.W.2d at 741. Therefore, defendants' summary judgment motion is granted as to Counts IV and V.

**d. Count VI: Unjust Enrichment**

In the alternative to the breach of contract claim, plaintiff argues that defendant has been unjustly enriched by its unlawful

---

[10] Plaintiff asserts that the Mattys' statement "either established a contract or at least raises a fact question on its existence." [Pl.'s Opp'n Brief at 26.] However, Minnesota courts have held that while the question of whether or not such a statement was made is for the jury, the *effect* of the statement is a question of law. See Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 740 (Minn. 2000); Dietz v. Dietz, 70 N.W.2d 281, 284 (Minn. 1955).

conduct. Plaintiff seems to argue that because defendants assigned her certain responsibilities without a concomitant increase in compensation, or because they constructively discharged her, defendants were unjustly enriched. The court finds no legal precedent supporting plaintiff's claim in an at-will employment context and therefore grants defendants' motion for summary judgment on Count VI.

**e. Count VII: Intentional Interference with Contract (Mattys only, in his individual capacity)**

Plaintiff alleges that defendant Mattys intentionally and tortiously interfered with plaintiff's employment relationship with Mallinckrodt. To be liable for interference with an subordinate's contract with an employer, a supervisor must have acted with malice or outside the scope of his duties. See Nordling v. Northern States Power Co., 478 N.W.2d 498, 506 (Minn. 1991). Plaintiff has produced no admissible evidence tending to show that Mattys was predominantly motivated by malice and was acting outside the scope of his duties in relation to plaintiff. Where a party fails to adduce any evidence of a necessary element of a claim, summary judgment is appropriate. See Celotex, 477 U.S. at 322-23. The summary judgment motion of defendant Mattys is therefore granted as to Count VII.

**f. Claim VIII: Aiding and Abetting (Mattys only, in his individual capacity)**

Plaintiff alleges that Mattys aided and abetted Mallinckrodt in a violation of the Minnesota Human Rights Act, in violation of Minn. Stat. § 363.03 subdivision 6. This claim also fails for lack of evidence. To prevail on this claim, plaintiff must prove that Mattys "*intentionally* * * * aid[ed], abet[ted], compel[led], or coerce[d] a person to engage in practices forbidden [by the act]." Davis v. Hennepin County, 599 N.W.2d 117, 123 (Minn. Ct. App. 1999) (quoting Minn. Stat. § 363.03, subd. 6) (emphasis in original). Plaintiff has presented no evidence that Mattys caused any other person to violate the MHRA. Therefore, summary judgment is granted in favor of defendant Mattys as to Count VIII.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. No. 15] is denied as to Count I of the complaint and granted as to Counts II and IV-VIII.

Dated: December 30, 2002

David S. Doty, Judge
United States District Court