UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-828(DSD/SRN)

Ann MacGregor,

       Plaintiff,

v.

                               **ORDER**
                   **AND ORDER AMENDING JUDGMENT**

Mallinckrodt, Inc., a Delaware
corporation, Tyco International,
Ltd., a Bermuda based corporation,
Jerry Mattys, an individual
defendant and Hans Stover, an
individual defendant,

       Defendants.

      Steve G. Heikens, Esq. and Heikens Law Office, 700 Lumber
      Exchange, 10 South Fifth Street, Minneapolis, MN 55402,
      counsel for plaintiff.

      David J. Duddleston, Esq., Natalie Wyatt-Brown, Esq. and
      Jackson & Lewis, 150 South Fifth Street, Suite 2800,
      Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon the motions of defendant

Mallinckrodt, Inc. for judgment as a matter of law, or

alternatively, for new trial or remittitur. Also before the court

are plaintiff's motions for a multiplier of actual damages, an

amendment of the pleadings and for attorney's fees and costs. For

the following reasons, defendant's motion for judgment as a matter

of law is denied, defendant's motion for new trial is denied,

defendant's motion for remittitur is denied, plaintiff's motion for

FILED
JUL 2 1 2003
RICHARD D. SLETTEN, CLERK
Judgment Ent'd.
Deputy Clerk's Initials _____

a multiplier of actual damages is denied, plaintiff's motion to amend the pleadings is denied, plaintiff's motion for attorney's fees is granted as modified and plaintiff's motion for costs is granted as modified.   On its own motion, the court modifies the punitive damages award in accordance with 42 U.S.C. § 1981a(3).

## BACKGROUND

### I.   Procedural History[1]

Plaintiff's amended complaint alleged discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), retaliation in violation of the Act, 42 U.S.C. § 2000e-3(a), intentional misrepresentation,[2] breach of contract, breach of the implied covenant of good faith and fair dealing and unjust enrichment.   The complaint further alleged that defendant Mattys, in his individual capacity, intentionally interfered with plaintiff's employment contract with defendant Mallinckrodt, Inc. and that he aided and abetted a violation of the Minnesota Human Rights Act in violation of Minnesota Statutes section 363.03 subdivision 2.

---

[1] The factual background of this matter is fully set forth in the court's order of December 30, 2002, granting partial summary judgment in favor of defendants.

[2] This claim was dismissed by stipulation of the parties. [Doc. No. 28.]

The court granted summary judgment in favor of defendants on all plaintiff's claims except gender discrimination under Title VII of the Civil Rights Act of 1964. All defendants except Mallinckrodt, Inc. were dismissed. The Title VII claim was tried before a jury, which returned a verdict in favor of plaintiff. By special verdict form, the jury awarded plaintiff actual damages consisting of $68,802 for lost wages, $102,000 for lost stock options and $1.00 in other damages.[3] The jury additionally awarded plaintiff $829,197 in punitive damages.

## DISCUSSION

### I.   Defendant's Motion for Judgment as a Matter of Law

Defendant moves for judgment as a matter of law on liability, or in the alternative, on each of the jury's damages awards. Defendant asserts that the evidence presented at trial does not support a finding of liability because plaintiff failed to show either adverse employment action or disparate treatment. Alternatively, defendant argues that the evidence adduced at trial does not support the award of punitive damages, that the evidence showed plaintiff failed to mitigate her wage loss and that there was no evidentiary basis for the award of lost stock options.

---

[3] Prior to the conclusion of the trial, the parties stipulated to a value of $102,000 if the jury were to find plaintiff suffered a loss of stock options.

**a.   Liability**

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, the court may enter judgment as a matter of law reversing a jury verdict if there was no "legally sufficient evidentiary basis" for the verdict.  Fed. R. Civ. P. 50(a)(1); Henderson v. Simmons Foods, Inc., 217 F.3d 612, 615 (8th Cir. 2000).  However, a party moving for Rule 50 relief following a jury trial faces "an onerous burden."  Henderson, 217 F.3d at 615.  The court must afford the non-moving party every reasonable inference and take as proven all facts supported by the evidence when viewed "in the light most favorable to the verdict."  Kim v. Nash Finch Co., 123 F.3d 1046, 1057 (8th Cir. 1997) rehearing denied.  It is not enough that the court itself might have reached a different conclusion.  See id. at 1057-58.  The jury's determination will be overturned only if "no reasonable juror" could have found in favor of the non-moving party.  Henderson, 217 F.3d at 615.

Plaintiff was required to prove by a preponderance of the evidence that defendant discharged or otherwise took adverse employment action against her on the basis of her gender.  See 42 U.S.C. § 2000e-2(a)(1) and (2).  While defendant asserts that plaintiff suffered no adverse employment action, that was a question of fact for the jury.  See Nash Finch Co., 123 F.3d at 1060-61; Ledergerber v. Stangler, 122 F.3d 1142, 1145 (8th Cir. 1997) (Beam, J. dissenting opinion).  Because adverse action

4

includes changes that negatively affect an employee's future career prospects, disadvantage or interfere with her ability to do her job, or place her in a less desirable position that affords little opportunity for salary increase or advancement, it was not unreasonable for the jury to find that plaintiff suffered adverse employment action because of her gender. See Kerns v. Capital Graphics, 178 F.3d 1011, 1016 (8th Cir. 1999); Nash Finch Co., 123 F.3d at 1060; Ledergerber, 122 F.3d at 1144-45.

Plaintiff met her burden by presenting both indirect and direct evidence of discrimination. For example, evidence showed that plaintiff was denied participation in leadership roles and that despite her qualifications, a less qualified male employee was given the Director of Marketing position. Evidence showed that the position of Director of Market Development offered to plaintiff after her job was eliminated had previously existed and been discontinued as a non-feasible position. Moreover, evidence showed that plaintiff's male supervisors made statements and took actions which support a reasonable inference that gender bias motivated defendant's actions.[4]

Viewing the evidence in the light most favorable to the verdict and granting it every reasonable inference, the court

---

[4] For example, evidence was introduced showing that one male manager ordered that no more women should be hired in the marketing department. Another senior manager described his vision for the company as "male dominated."

concludes that there was sufficient evidence from which reasonable jurors could find that plaintiff suffered adverse employment treatment under circumstances from which unlawful discrimination could be inferred.  See Henderson, 217 F.3d at 615.  Therefore, defendant's motion for judgment as a matter of law on the issue of liability is denied.

### b.   Punitive Damages

Defendant moves for a judgment as a matter of law that plaintiff failed to make the necessary showings to support an award of punitive damages under Title VII.  Defendant must overcome the same "onerous" burden and the court may grant the motion only if "there is a complete absence of probative facts" supporting the jury's award.  Henderson, 217 F.3d at 615.

Title VII permits an award of punitive damages when a defendant employer "engaged in a discriminatory practice with malice or with reckless indifference to the [plaintiff's] federally protected rights."  42 U.S.C. § 1981a(b)(1).  "'Reckless indifference' means that the defendant had 'knowledge that it may be acting in violation of federal law.'" Walsh v. Nat'l Computer Systems, Inc., __ F.3d __ 2003 WL 21434785 *7 (8th Cir. June 23, 2003)(citing Kolstad v. American Dental Ass'n, 527 U.S. 526, 535 (1999)).  Recklessness may be imputed to the defendant if the offending individual had management responsibilities and was acting in the scope of his employment.  See id.  A defendant corporation

may avoid liability for punitive damages by demonstrating that the discrimination occurred in spite of its good faith efforts to comply with Title VII. See Kolstad at 545-46.

Viewing the evidence in the light most favorable to plaintiff and granting it every reasonable inference, the court finds there was sufficient evidence to support the jury's award of punitive damages. The evidence showed that the discriminatory acts were carried out by plaintiff's direct supervisors, Jerry Mattys and Hans Stover. Mattys and Stover were in management roles. Their actions were within the scope of their employment. It was not unreasonable for the jury to find their conduct recklessly indifferent to plaintiff's rights. See Kolstad, at 535-36; see also Smith v. Wade, 461 U.S. 30, 51 (1983) (adopting reckless indifference standard for punitive damages). It was also permissible for the jury to impute that recklessness to the defendant corporation. See Walsh, 2003 WL 21434785 at *7. Despite defendant's argument that it had a harassment and discrimination policy in place, there was little evidence of a meaningful investigation of plaintiff's complaints. Therefore, defendant's motion for a judgment as a matter of law as to punitive damages is denied.

### c.   Actual Damages: Lost Wages and Stock Options

Defendant moves for judgment as a matter of law that plaintiff was not entitled to damages for lost wages, asserting that the jury

7

ignored evidence that plaintiff failed to mitigate lost wage damages. Defendant also moves for a judgment as a matter of law that the jury's award of damages for the value of lost stock options was impermissibly speculative. Again, the court resolves factual conflicts in plaintiff's favor and grants every reasonable inference supported by the evidence in her favor. See United Healthcare Corp. v. American Trade Ins. Co., Ltd., 88 F.3d 563, 569-70 (8th Cir. 1996).

Title VII claimants have a statutory duty to mitigate their damages. See 42 U.S.C. § 2000e-5(g); Ford Motor Co. v. Equal Employment Opportunity Comm'n, 458 U.S. 219, 231-32 (1982). Claimants need not accept substantially different employment, but they must diligently pursue similar work for similar wages. See Excel Corp. v. Bosley, 165 F.3d 635, 639 (8th Cir. 1999). If suitable employment is found, claimants have a duty to maintain that employment. See id. Claimants who accept incompatible jobs are not required to maintain them during the pendency of their Title VII claims. See Sellers v. Delgado Community College, 839 F.2d 1132, 1137 (5th Cir. 1988). Failure to mitigate is a question of fact and the defendant bears the burden of proof. See DiSalvo v. Chamber of Commerce of Greater Kansas City, 568 F.2d 593, 597 (8th Cir. 1978).

The jury was instructed on plaintiff's duty to mitigate.[5] Plaintiff presented evidence that she accepted another position with similar pay after leaving the defendant corporation.   She claimed that she resigned from that position due to changed circumstances just before her six-month contract with that employer was due to expire.   She testified that the position became unsuitable for her after it changed.   Plaintiff additionally testified about her efforts to develop her own business. Defendant challenged plaintiff on the issue of mitigation during cross examination, but failed to persuade the jury.   The court does not find sufficient reason to disturb the jury's finding on the issue of mitigation.

Defendant also argues that the jury's award of damages for lost stock options was speculative and unsupported by the evidence. Damages which are not reasonably certain are not recoverable.   See Big Rock Mountain Corp. v. Stearns-Roger Corp., 388 F.2d 165, 170

---

[5] Jury Instruction No. 22, taken from the Model Civil Instructions for the District Courts of the Eighth Circuit, states in pertinent part:

> You are also instructed that plaintiff has a duty under the law to "mitigate" her damages--that is, to exercise reasonable diligence under the circumstances to minimize her damages. Therefore, if you find by the preponderance of the evidence that plaintiff failed to seek out or take advantage of an opportunity that was reasonably available to her, you must reduce her damages by the amount she reasonably could have avoided if she had sought out or taken advantage of such an opportunity.   (Jury Instruction No. 22.)

(8th Cir. 1968).  However, damages need only be proven to a reasonable degree of certainty and mathematical precision is not required.  See Pemberton v. OvaTech, Inc., 699 F.2d 533, 541 (8th Cir. 1982).  To effectuate the "make whole" provisions of Title VII, the court is required to grant the most complete relief possible to claimants who have proven unlawful discrimination.  See Franks v. Bowman Transp. Co., Inc., 424 U.S. 747, 763-64 (1976); Hartley v. Dillard's, Inc., 310 F.3d 1054, 1062 (8th Cir. 2002). The Eighth Circuit Court of Appeals has cited with approval a decision of the Tenth Circuit Court of Appeals upholding an award of lost stock options in a claim brought under Age Discrimination in Employment Act, 29 U.S.C. § 626(b).  See Hartley, 310 F.3d at 1062 (citing Greene v. Safeway Stores, Inc., 210 F.3d 1237, 1243 (10th Cir. 2000)).

The parties stipulated to the value of plaintiff's options and left to the jury the question of whether or not plaintiff would have sold her options had she not been the victim of gender discrimination.  Plaintiff introduced evidence of her practice of buying and selling stock options soon after they became available. Because the jury's finding was reasonable in light of the evidence introduced at trial, the court will not disturb the award. Therefore, defendant's motion for a judgment as a matter of law reversing the jury's award of back damages in lost wages and stock options is denied.

## II.  Defendant's Motion for New Trial

Defendant argues that a new trial is appropriate because the verdict was contrary to the evidence, the damages awarded were excessive and the trial was flawed by errors of law.  The purpose of granting a new trial is to prevent a miscarriage of justice.  See Altrichter v. Shell Oil Co., 263 F.2d 377, 380-81 (8th Cir. 1959).  The court may grant a motion for a new trial if it finds that the verdict is against the great weight of the evidence, the award is excessive or when a prevailing plaintiff refuses to accept a remittitur.  See Gasparini v. Center For Humanities, Inc., 518 U.S. 415, 433 (1996).  The court may order a new trial only to prevent a serious injustice.  See Leichihman v. Pickwick Int'l, 814 F.2d 1263, 1266-67 (8th Cir. 1987).  Unlike motions for judgment as matter of law, the court is not required to view the evidence in the light most favorable to the prevailing party.  See White v. Pence, 961 F.2d 776, 780-81 (8th Cir. 1992).  It may weigh the evidence and judge the credibility of the witnesses.  See id.

The court heard the testimony, observed the witnesses and reviewed the evidence presented at trial.  The court does not agree that the verdict was contrary to the evidence presented.  As discussed below, the court does find that the jury's award of punitive damages exceeds the statutory limit provided in Title VII.  See 42 U.S.C. § 1981a(b)(3).  However, where an award beyond the statutory limit can be corrected by the court, a new trial is not

11

necessary.  See Luciano v. Olsten Corp., 110 F.3d 210, 220 (2nd Cir. 1997).

Defendant argues that the court erred in admitting certain background evidence and evidence of sexually harassing conduct by plaintiff's supervisor.  Defendant further contends that the jury instructions were confusing and misleading.  Finally, defendant argues that the jury should not have been allowed to consider the question of lost stock options.  Defendant claims that it was prejudiced by these alleged errors of law.

As a general rule, relevant evidence is admissible.  See Fed. R. Evid. 402.  Evidence of a discriminatory act occurring outside the statute of limitations period cannot be the basis for a finding of liability or damages, but it "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue...."  United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977).  "Because an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely admitted at trial."  Hawkins v. Hennepin Technical Center, 900 F.2d 153, 155-56 (8th Cir. 1991).

Plaintiff's employment discrimination claim implicated both the mixed-motive analysis of Price Waterhouse and the shifting burdens analysis set forth in McDonnell Douglas.  See Price

12

Waterhouse v. Hopkins, 490 U.S. 228, 244-45 (1989); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Because defendant argued that its actions were based on business judgment, plaintiff was allowed to present evidence that defendant's justification was a pretext for discrimination. See McDonnell Douglas Corp., 411 U.S. at 804. Therefore, admission of evidence of discriminatory conduct occurring outside the statutory period as background information was not prejudicial error and is not the basis for a new trial.

Defendant next argues that the court's instructions to the jury offered it "a smorgasbord of adverse actions from which to find liability, including discharge; constructive discharge; cuts in pay or benefits; changes that affect future career prospects, or which disadvantage or interfere with her ability to do her job; and transfer to a position affording fewer opportunities for salary increases or advancement." (Def.'s Mem. in Supt. of Mot. for JMOL, New Trial or Remittitur at 19-20.) Defendant argues that its proposed instruction, which the court rejected, limited the jury to the question of constructive discharge. Because the circumstances of plaintiff's termination involved disputed facts, the court instructed the jury as to the law regarding both direct and constructive discharge. (See Jury Inst. No. 16.) Further, because

adverse employment action is an essential element of a Title VII claim, the court instructed the jury as to the meaning of that term.[6]

Defendant further argues that "liability was invited" because the jury needed only to "select any [one] of these myriad possibilities." (Def.'s Mem. in Supt of Mot. for JMOL, New Trial or Remittitur at 19-20.) Each of the actions included in the instruction has been deemed adverse by the Eighth Circuit Court of Appeals and many of them occurred in this case.[7] Moreover,

---

[6] Instruction No. 22 described adverse employment action as it is defined in the following cases: Kerns v. Capital Graphics, 178 F.3d. 1011, 1016 (8th Cir. 1999) (material employment disadvantage includes changes that affect employee's future career prospects); Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997) (actions that disadvantage or interfere with employee's ability to do his or her job); Manning v. Metropolitan Life Ins. Co., Inc., 127 F.3d 686, 692 (8th Cir. 1997) (tangible change that constitutes a material employment disadvantage); Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997) (less desirable position with little opportunity for salary increases or advancement, but not mere loss of status and prestige); Harlson v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994) (not mere inconvenience or alteration of responsibilities).

[7] Ironically, defendant argues that it proposed an instruction focusing on constructive discharge and not adverse action and yet later defendant argues that "MacGregor undeniably was terminated as of October 31, 1999." (Def.'s Mem. in Supt of Mot. for JMOL, New Trial or Remittitur at 20 n. 9.) Defendant continues, "[a]s termination was listed as one of the many possible adverse actions in the instruction, the instruction essentially directed a verdict for MacGregor." Id. In addition to the obvious contradiction in these arguments, defendant overlooks Instruction No. 15, which allowed the jury to find for plaintiff only if she proved by a preponderance of the evidence that defendant took adverse action (including direct or constructive termination) and that defendant's actions were motivated by her gender. (See Instruction No. 15.)

Instruction No. 15 required that before the jury could find defendant liable, plaintiff must have proven both adverse action and a gender biased motive.[8] Therefore, the court's instruction on adverse action is not the basis for a new trial.

Defendant also moves for a new trial because it claims plaintiff did not disclose her intent to claim damages for lost stock options during discovery. Defendant filed a motion in limine to exclude evidence of the value of the lost stock option. At the hearing on the motion, defendant asked for a continuance in order to retain an expert to testify regarding the value of plaintiff's stock options. The court denied the request for a continuance. Nonetheless, and in spite of the notice requirement of Fed. R. Civ. P. 26(a)(2), the court granted defendant leave to introduce expert testimony on the issue of stock options at trial if it so chose. For that reason, and the reasons set forth in the court's discussion of defendant's motion for a judgment as a matter of law, the court does not find a sufficient basis for a new trial.

---

[8] Defendant also argues that because the court identified several types of adverse action, it increased the odds of a verdict in plaintiff's favor. Evidence was introduced showing that plaintiff was either discharged or constructively discharged, that she was denied opportunities that would or might lead to future career prospects, that she experienced job changes that interfered with her ability to do her job and that she was eventually offered a position that afforded less opportunity for advancement. Because any of those actions can be the basis of liability under Title VII if animated by a discriminatory intent, defendant's argument has no merit.

## III. Defendant's Motion for Remittitur

Defendant moves for remittitur of the jury's award of punitive damages and lost wages and stock options, arguing that the punitive award is excessive and that the award of lost wages and stock options is inappropriate because plaintiff unreasonably rejected the position it had offered to her and because she became employed immediately after her employment with defendant ended.

It is within the trial court's discretion to order a new trial or enter a remittitur of damages where the damages awarded are excessive. See Linn v. United Plant Guard Workers of America, Local 114, 383 U.S. 53, 66 (1966). However, "[a] district court should grant remittitur only when the award is so excessive as to shock the court's conscience." Triton Corp. v. Hardrives, Inc., 85 F.3d 343, 347 (8th Cir. 1996) (citing Norton v. Caremark, Inc., 20 F.3d 330, 340 (8th Cir. 1994)). The court does not find either award conscience shocking.

Although the punitive damages award exceeds the maximum amount permitted by statute (see 42 U.S.C. § 1981a(b)(3)(D); Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 575 (8th Cir. 1997)), remittitur is not required where the court is permitted to adjust the award and enter judgment in the statutory maximum amount. See Luciano v. Olsten Corp., 110 F.3d 210, 220 (2nd Cir. 1997). Therefore, defendant's motion for remittitur is denied.

42 U.S.C. § 1981a(b)(3) limits total compensatory damages, including punitive damages, based on the defendant employer's total number of employees. For employers with between 101 and 200 employees, compensatory damages are limited to $100,000. See 42 U.S.C. § 1981a(b)(3)(B). For employers with between 201 and 500 employees compensatory damages are limited to $200,000 and for those with more than 500 employees, the limit is $300,000. See 42 U.S.C. § 1981a(b)(3)(C) and (D). The parties dispute the number of employees that should be attributed to defendant. Defendant contends that because the only evidence introduced at trial suggested that approximately 300 people worked at the facility where the relevant events occurred, punitive damages must be limited to $200,000.

The court disagrees with defendant's assertion that for purposes of § 1981a(b)(3) the size of a defendant employer should be based on the number of employees at the location where the offending conduct occurred. That view is contrary to the remedial purpose of Title VII.[9] The court may take judicial notice of any

---

[9] In fact, the Eight Circuit Court of Appeals has gone so far as to consolidate separate corporations to achieve a sufficient number of employees to satisfy Title VII. See Baker v. Stuart Broadcasting Co., 560 F.2d 389, 392 (8th Cir. 1977). To determine who the relevant employer is, the court must consider "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, (4) common ownership or financial control." Id. Under any of these analyses the court would conclude that defendant had more than 500 employees for purposes of Title VII and 42 U.S.C. § 1981a(b)(3).

fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2) and (c). It cannot be reasonably disputed that defendant had more than 500 employees during the relevant time frame. Reference to company records or state and federal income tax withholding records would provide sufficiently accurate confirmation, if it were needed. Therefore, the court takes judicial notice of the fact that defendant had more than 500 employees during the relevant time period. Accordingly, the punitive damages award is reduced to $300,000.

## IV.  Plaintiff's Motion to Amend the Pleadings and Reallocate Damages

Plaintiff moves for a reallocation of a portion of the punitive damages if the court determines that the compensatory award must be reduced pursuant to statute. Plaintiff contends that because the standards for liability under the Minnesota Human Rights Act ("MHRA") and Title VII are the same, the court has discretion to reallocate as MHRA damages that part of the award in excess of the Title VII limit. See Minn. Stat. § 363.03. To accomplish that reallocation, plaintiff asks the court to amend the pleading to conform to the evidence by adding a MHRA gender discrimination claim. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be

treated in all respects as if they had been raised in the pleadings." Fed. R. Civ. P. 15(b). Leave to amend should be granted as justice requires. See Fed. R. Civ. P. 15(a).

The court finds no express or implied consent to try an unpleaded MHRA claim. Nor can plaintiff claim inadvertent omission or oversight, because the applicable Minnesota statute is mentioned in the introductory section of her amended complaint.[10] The court concludes from the absence of a MHRA allegation that plaintiff intentionally elected not to bring a state discrimination claim.[11] Justice does not require that plaintiff be allowed to add an entirely new claim after the jury has reached its verdict so that she can seek additional damages.[12]

---

[10] Although the introductory statement in plaintiff's amended complaint refers to Minnesota statutory and common law claims and cites Minn. Stat. § 363.03 Subd. 1(2), count 1 of the amended complaint, which is the only count that survived summary judgment, alleged only Title VII gender discrimination.

[11] The issue of the non applicability of the MHRA also arose at the charge conference, where counsel for plaintiff agreed that the only claim litigated at trial arose under Title VII and that the federal statute of limitations applied.

[12] Plaintiff cites Madison v. IBP, Inc., 257 F.3d 780, 800 (8th Cir. 2000) as permitting reallocation of damages between federal and state claims. However, that case is distinguishable because there the state and federal claims were both litigated to a verdict but the jury was not asked to apportion damages between the claims. See id. at 801 (noting that "[t]he jury in this case found for Madison on both her state and federal sexual harassment claims..." Id. at 801-02). Here the only claim presented to the jury was gender discrimination under Title VII.

Because the court denies plaintiff's motion to amend the pleadings and there was no verdict on a MHRA claim, there is no state discrimination claim to which damages could be reallocated. Plaintiff's motion for reallocation is denied.

**V.   Plaintiff's Motion for a Multiplier of Actual Damages**

Plaintiff also asks the court to apply the trebling provision of the MHRA to increase the actual damages awarded.   See Minn. Stat. § 363.071; Mathieu v. Gopher News Co., 273 F.3d 769, 780 (8th Cir. 2001).   Under the MHRA, it is within the court's discretion to treble compensatory damages, not including punitive damages for emotional pain and suffering, which is limited to $8,500. Because the court denied plaintiff's motion to amend the pleadings to incorporate a claim under the MHRA, the motion for treble damages is denied as moot.[13]

**VI.   Plaintiff's Motion for Attorney Fees**

Plaintiff moves for attorney's fees, as authorized by Title VII.   See 42 U.S.C. § 2000e-5(k).   Plaintiff requests fees of $207,499.   Title VII permits an award of "reasonable attorney's fees" and costs to the "prevailing party."   Id.   The award of attorney's fees is committed to the discretion of the court.   See id.   The appropriate fees are generally determined by the

---

[13] Even if an amendment of the pleadings adding a MHRA claim was appropriate in this case, the court would not find it appropriate  to vary the jury's award for lost wages and stock options.

"lodestar" method, which requires multiplying a reasonable number of hours expended on the litigation by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "There is no precise rule or formula" for determining the reasonableness of the hours expended prosecuting a Title VII action. Id. Generally, hours expended on unsuccessful claims that are not closely related to successful claims are not compensable. See id. at 435. Conversely, time expended on unsuccessful claims that share common factual predicates or related legal theories with successful claims should not necessarily be excluded. See id. The most important factor in determining the reasonableness of the fee petition is the outcome achieved.[14] See id.

Defendant does not contest that fees are appropriate in this case. (See Def.'s Mem. in Opp'n to Pl.'s Mot. for Attorney's Fees at 1.) Defendant contends that the fee awarded should be less than requested because: (1) part of the fee relates to defendants who were dismissed or never served, (2) the fee is unreasonable relative to plaintiff's limited success, (3) part of the fee is based on unrelated claims on which plaintiff did not prevail, (4) some clerical and non-legal work was billed at attorney and paralegal rates, (5) excessive time and unnecessary duplication of

---

[14] The Hensley court emphasized the importance of relating the fee to the result achieved, stating "[w]e hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees...." Hensley, 461 U.S. at 440.

effort were claimed, (6) some time entries were vague or imprecise, (7) plaintiff failed to provide all original time records, and (8) the case was not complex.

The court has carefully reviewed plaintiff's affidavit and attachments supporting her fee petition and considered each of defendant's objections. The court finds initially that plaintiff's success in the litigation was significant. Although five of plaintiff's six claims were dismissed by summary judgment,[15] the Title VII discrimination claim was the main thrust of plaintiff's complaint. See Wal-Mart Stores, Inc. v. Barton, 223 F.3d 770, 772 (8th Cir. 2000) (deeming plaintiff's success on Title VII discrimination claim "significant" despite failure to prevail on five related claims because discrimination was at the heart of plaintiff's case). Defendant vigorously opposed the discrimination claim in its summary judgment motion and at trial. The scope of the jury's award emphasizes its view that plaintiff met her burden of proof on liability and damages.

Second, the ratio between the fees requested and the damages awarded is not unreasonable. Plaintiff's counsel obtained an award totaling $1,000,000 and seeks a fee of just over $200,000. A fee of approximately twenty-percent is not on its face unreasonable.

---

[15] The Hensley Court expressly rejected "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." Id., 461 U.S. at 435 n. 11.

See <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 574 (1986) (noting that amount of damages recovered is relevant to amount of attorney's fees to be awarded).

The court is not persuaded by defendant's claims that the requested fee is unreasonable in light of plaintiff's level of success, that excessive and duplicative time was spent on the case and that the case was not complicated. The court has explained its view that plaintiff's success was substantial. <u>See Wal-Mart Stores, Inc.</u>, 223 F.3d at 772. Also, the court does not find that one lawyer and one paralegal attending depositions, conferences and trial, or in some instances reviewing the same materials, necessarily constitutes over-lawyering.[16] <u>See e.g. Minneapolis Star and Tribune Co. v. United States</u>, 713 F. Supp. 1308, 1312 (D. Minn. 1989) (finding that nine lawyers, one summer law clerk, four legal assistants and two audio visual assistants working on a Privacy Act action was excessive over-lawyering). The court also disagrees that plaintiff's fee request should be reduced because the issues in the case were not complex.

Defendant's other objections have merit. Defendant correctly notes that cost for time spent pursuing unique claims against defendants that were eventually dismissed or never served cannot be

---

[16] The court also notes that defendant utilized two attorneys, both of whom were present throughout trial.

recovered under Title VII.[17] <u>See</u> <u>Hensley</u>, 461 U.S. at 435. Defendant also appropriately objects to block-style billing entries that do not permit the allocation of time between successful and unsuccessful claims or between dismissed and remaining defendants.[18] That same objection applies to vague or incomplete entries. <u>See</u> <u>Houghton v. Sipco, Inc.</u>, 828 F. Supp 631, 644 (S.D. Iowa, 1993) <u>rev'd on other grounds</u>. A party petitioning the court for attorney's fees has the burden of producing evidence that those fees are appropriate. <u>See</u> <u>Hensley</u>, 461 U.S. at 437; <u>H.G. Inc. v. Flygt Corp.</u>, 925 F.2d 257, 260 (8th Cir. 1991). The <u>Flygt</u> court affirmed a twenty-percent reduction of a fee award because plaintiff's documentation was incomplete or imprecise. <u>See</u> <u>Flygt</u>, 925 F.2d at 260. Defendant also reasonably objects to charges for clerical work at attorney and paralegal rates.[19] It is appropriate

---

[17] A few examples from plaintiff's counsel's billing records include 2.7 hours spent on good faith and fair dealing and misrepresentation claims, both of which were dismissed by summary judgment; 1.0 hours spent trying to locate Hans Stover, who was never served a summons; .10 hours spent verifying registered agent for corporate defendants later dismissed; .30 hours spent attempting to serve a corporation later dismissed and .30 hours trying to reach Stover by phone. (<u>See</u> Heikkens Aff. Ex. 1 at 3-4.)

[18] Some examples of block entries that do not allow the court to separate successful and unsuccessful claims include: "Conference with Ann MacGregor about termination and history of decisions;" "Confer with Ann MacGregor by email on facts and inferences;" "Outline fact pattern for legal complaint;" "Revise complaint-adding details;" "Revise prayer for relief." (<u>See</u> Heikkens Aff. Ex. 1 at 1-3.)

[19] A few examples of clerical or non-legal work performed by
(continued...)

to bill for paralegal work at reasonable paralegal rates, but clerical duties do not justify attorney and paralegal rates. <u>See</u> <u>Missouri v. Jenkins</u>, 491 U.S. 274, 288 n. 10 (1989).

When the court cannot determine the appropriate fee from the record, it must exercise its discretion in reducing the fee award. <u>See</u> <u>Hensley</u>, 461 U.S. at 433, 437. After carefully considering the billing records submitted in conjunction with plaintiff's motion for fees and the factors set forth in <u>Hensley</u>, the court finds that plaintiff's fee request should be reduced by the amount of $31,124.85 (fifteen-percent). <u>See</u> <u>Hensley</u>, 461 U.S. 424, 430-440.

## VII. Plaintiff's Motion for Costs

Finally, defendant objects to a portion of plaintiff's request for costs. Defendant challenges plaintiff's inclusion of $1,696 for computer-aided legal research, $257 for photocopying of documents used in discovery and deposition and $151 for photocopying of pleadings, briefs and jury instructions. In addition to attorney's fees, Title VII allows a prevailing plaintiff to recover other reasonable costs. <u>See</u> 42 U.S.C. § 2000e-5(k). However, computer-aided legal research is not a

---

[19](...continued)
counsel or the paralegal and charged at those rates include: "Supplement phone numbers; addresses for witnesses; send to EEOC;" "Update witness addresses;" "File complaint in federal court for client;" "Serve CT corporation for Mallinckrodt and Tyco, International;" "Schedule conference with defendant for Rule 16 report;" "Serve Subpoena on Tina Cronin;" "...edit and type summary judgment brief;" "...type draft letter to Magistrate Nelson." (<u>See</u> Heikkens Aff. Ex. 1 at 1-3; Meier Aff. Ex. 1 at 2-3.)

recoverable cost.  See Leftwich v. Harris-Stowe State College, 702
F.2d 686, 695 (8th Cir. 1983).  Further, while photocopying expenses
are recoverable to the extent they are necessary for use in the
case, copies of pleadings and general discovery materials are not
considered "necessarily obtained for use in the case."  Emmenburger
v. Bull Moose Tube Co., 33 F. Supp. 2d 1127, 1133 (E.D. MO 1988)
(quoting McIlveen v. Stone Container Corp., 910 F.2d 1581, 1584 (7th
Cir. 1990)).  Therefore, plaintiff's petition for costs is reduced
by $2,104.


**CONCLUSION**

     For these reasons, **IT IS HEREBY ORDERED** that:

     1.   Defendant's motion for judgment as a matter of law on the
issues of liability, lost wages and lost stock options [Doc. No.
58-1] is denied.

     2.   Defendant's motion for new trial or remittitur [Doc. No.
58-2] is denied.

     3.   Plaintiff's motion for multiplier of actual damages and
amendment of the pleadings to conform to the evidence [Doc. No. 69-
1] is denied.

     3.   Plaintiff's motion for fees [Doc. No. 60-1] is granted as
modified by the court.  Plaintiff is awarded attorney's fees in the
amount of $176,374.15.

4.   Plaintiff's motion for costs as prevailing party [Doc. No. 60-2] is granted as modified by the court.   Plaintiff is awarded costs in the amount of $3,384.

5.   The award of punitive damages is reduced by the court to the amount of $300,000.

6.   An amended judgment is entered in favor of plaintiff Ann MacGregor and against defendant Mallinckrodt, Inc. in the amounts of $470,803 in damages and $179,758.15 in fees and costs, as follows:

|    |                    |              |
|----|--------------------|--------------|
| a. | Lost Wages         | $ 68,802.00  |
| b. | Lost Stock Options | $102,000.00  |
| c. | Other Damages      | $     1.00   |
| d. | Punitive Damages   | $300,000.00  |
| e. | Attorney's Fees    | $176,374.15  |
| f. | Costs              | $  3,384.00  |

Dated: July 21 , 2003

David S. Doty, Judge
United States District Court

27

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd