# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 03-3166

| | | |
|---|---|---|
| Ann MacGregor, | * | |
| | * | |
| Appellee, | * | 01-cv-828 DSD/SRN |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | Minnesota |
| Mallinckrodt, Inc., a Delaware Corporation; Tyco International, Ltd., a Bermuda Based Corporation; Jerry Mattys; and Hans Stover, | * | |
| | * | |
| Appellants. | * | |

Submitted: May 10, 2004
Filed: June 30, 2004

Before MURPHY and FAGG, Circuit Judges, and GOLDBERG,[1] Judge.

GOLDBERG, Judge.

Appellants Mallinckrodt, Inc., Tyco International, Inc., Jerry Mattys, and Hans Stover (collectively "Mallinckrodt") appeal from a jury award to Appellee Ann MacGregor ("MacGregor") in a gender discrimination suit. Mallinckrodt charges as

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

SCANNED
JUL 26 2004
U.S. DISTRICT COURT MPLS

error denial of its motions for remittitur, new trial, and judgment as a matter of law by the district court.[2] Mallinckrodt also claims that the district court abused its discretion by taking judicial notice of the company's size. For the following reasons, we affirm.

## I. Statement of Facts

Mallinckrodt, Inc. ("the company"), a producer and seller of health care products, employed MacGregor, who was the senior female in marketing and the only female among the three Business Segment Directors ("BSDs") at the Plymouth, Minnesota facility. Her compensation was significantly less than the two male BSDs, and she had fewer direct reports. The company justified the higher salary for Leon Narem, a BSD, because he produced the most revenue, and though David Baker, another BSD, accounted for the least revenue, his higher compensation was justified because he had sold his Canadian company to the company in 1995.

Jerry Mattys, MacGregor's initial supervisor, was promoted to national vice president in early 1999. Mattys reorganized his chain of command from seventeen direct reports, four of whom were female, to twelve direct reports, none of whom were female. Mattys also named Hans Stover, formerly MacGregor's peer, to succeed Mattys in his former post. At his first meeting, Stover commented that there were "too many women at the table." The remark was reported to Tina Cronin, the Director of Human Resources. Instead of reprimanding him, Cronin told Stover to be careful with such comments because they could be taken "out of context." Additionally, when a female manager proposed hiring a female candidate in her department, Stover refused, stating that "there are too many women in marketing."

---

[2]The Honorable David S. Doty, Judge, United States District Court for the District of Minnesota.

Stover decided to consolidate the BSD positions into one Director of Marketing, and, according to MacGregor, held an ongoing presentation contest to determine which BSD would be promoted. Stover also allowed David Gast, who worked in sales rather than marketing and outside the Plymouth facility, to enter the contest after it had started. Although MacGregor's scores exceeded those of Narem and Gast, Stover promoted Gast based on his higher energy level and better rapport with others.

Stover then offered MacGregor a new position, Director of Market Development. This new position had no budgetary or supervisory responsibilities. MacGregor engaged in negotiations with Stover and Mattys about her continued employment. Given her success with a recent project, MacGregor requested a $12,000 per year pay increase to $105,000 per year, a $15,000 signing bonus, the title of Senior Director, and confirmation that her position would lead to advancement. Stover refused the signing bonus and offered only a $7,000 per year pay increase. He declined the higher title because he wanted his direct reports at the same level. Stover told MacGregor that his offer was the best he could do. On September 1, 1999, MacGregor left Stover a message rejecting the position as offered.

Meanwhile, MacGregor had complained to Mattys, alleging Stover had discriminated against her. Mattys alerted Cronin, who responded by interviewing MacGregor, Mattys, Stover, and various witnesses and by consulting with Mallinckrodt's in-house counsel. Cronin determined there had been no discrimination. Mallinckrodt contends that the results of this investigation were communicated to MacGregor, but MacGregor denies such a report.

On September 2, 1999, Stover sent a memo to Mallinckrodt employees stating that MacGregor was leaving the company. He offered the Director of Market Development position to Narem. Narem had been making $100,000 per year, and after Stover acquiesced to his request for his annual merit increase, Narem took the

position at $104,000 per year. He remained there until the Plymouth facility closed on December 31, 2000.

On September 3, 1999, MacGregor received a letter stating October 3, 1999 as her last day; the letter offered her severance pay and notice of her rights under COBRA. MacGregor stayed until October 31, 1999 to launch a new product her team had created and developed.

On summary judgment, the district court dismissed all of MacGregor's claims against Mallinckrodt except for gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and all claims against Mattys[3]. After a week-long trial, a jury awarded MacGregor a total of $1,000,000 in damages: $68,802 for lost wages, $102,000 for lost stock options, $1 for other damages, and $829,197 in punitive damages. Mallinckrodt's motions for judgment as a matter of law, new trial, and remittitur were denied. However, applying the statutory damages cap under the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b)(3)(D), the district court reduced the punitive damages award to $300,000.

---

[3]MacGregor's amended complaint alleged retaliation, intentional misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment by Mallinckrodt. The complaint also alleged that Mattys had "intentionally interfered with plaintiff's employment contract . . . and that he aided and abetted a violation of the Minnesota Human Rights Act[.]" Order and Order Amending Judgment at 2, MacGregor v. Mallinckrodt, Civil No. 01-828 (D. Minn. July 21, 2003) (Doty, J.) ("Order").

## II. Discussion

### A. The District Court Properly Denied Judgment as a Matter of Law on Liability

*1. There Was Sufficient Evidence To Find Mallinckrodt Liable*

Mallinckrodt asserts that the district court erroneously denied its motion for judgment as a matter of law on MacGregor's claim for gender discrimination. Mallinckrodt contends that MacGregor's rejection of the Director of Market Development position restricts her to a constructive discharge theory to prove adverse action.

This Court reviews the district court's denial of Mallinckrodt's motion for judgment as a matter of law *de novo* and in the light most favorable to the jury verdict for MacGregor. Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1245, 1247 (8th Cir. 1998) (internal citations omitted). This Court will not set aside a jury verdict "unless there is a complete absence of probative facts to support the verdict." Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 634 (8th Cir. 1998) (internal citation omitted).

A prima facie case of discrimination requires the employee to present evidence of an adverse employment action brought on by the employer's discriminatory motive. Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1016 (8th Cir. 1999) (internal citation omitted). Whether there has been an adverse action is an issue of fact for a jury to determine. See Kim v. Nash Finch Co., 123 F.3d 1046, 1061-62 (8th Cir. 1997); Davis v. City of Sioux City, 115 F.3d 1365, 1369 (8th Cir. 1997).

In this case, where there is a conflict over whether MacGregor quit or was fired after having received an alternative offer of employment, there are two ways the jury

could have found liability. First, the jury could have found that MacGregor was discharged and that her termination was motivated by her gender. See Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit, § 5.01 (2001) (modified). Alternatively, the jury could have found that MacGregor resigned under circumstances amounting to constructive discharge. See Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996). Because MacGregor did not present evidence to support a theory of constructive discharge, the second method was not available. Accordingly, the jury's finding of liability equates to a finding of adverse action with discriminatory motive.

As the district court found, MacGregor presented ample evidence of discrimination. She was passed over for a promotion which was instead given to a less qualified male employee. The alternate position offered to her, Director of Market Development, had previously been discontinued as non-feasible. Additionally, Stover's two references to "too many women" would support a reasonable inference of discriminatory motive.

*2. MacGregor Was Not Required to Prove Constructive Discharge to Show Liability*

A constructive discharge theory of liability allows an employee to sue for discrimination even after she has voluntarily resigned. See Tidwell, 93 F.3d at 494. A constructive discharge occurs when an employee resigns after the employer has created an intolerable working environment in a deliberate attempt to compel such a resignation. See Smith v. Goodyear Tire & Rubber Co., 895 F.2d 467, 472 (8th Cir. 1990) (internal citation omitted).

However, where an employer offers to substitute a new job for one that has been eliminated, the employee's rejection of the new job does not necessarily indicate that the employee has resigned. Establishing an adverse action requires the employee

to show a materially significant disadvantage including "[t]ermination, cuts in pay or benefits, and changes that affect an employee's future career prospects [as well as] circumstances amounting to a constructive discharge." Kerns, 178 F.3d at 1016 (internal citations omitted). Thus, constructive discharge is but one incident by which an employee can demonstrate an adverse action.

Mallinckrodt presented evidence that could reasonably have shown that MacGregor resigned and that there was no adverse action. The elimination of MacGregor's position may have been part of an overall streamlining of the reporting structure at the Plymouth plant. The appointment of a seemingly lesser qualified male as Director of Marketing may have been the result not of discrimination but rather of his higher energy level and better rapport with others. Moreover, MacGregor's refusal of the substitute offer by "rejecting the position, as offered" could be taken as a resignation, particularly in light of Stover's telling her that the last offer was the best he could do.

However, considering the facts in the light most favorable to the jury verdict, we conclude that the jury's finding of liability shows that MacGregor was terminated and that this termination was an adverse employment action. Stover notified the company that MacGregor's employment would end one day after she had rejected his offer. Stover's admission that she expected a response from him indicates that the negotiation process was ongoing and that MacGregor did not resign. Furthermore, Mallinckrodt's letter to MacGregor discussed her severance pay and COBRA rights, benefits typical for terminated employees.

The newly-created position that MacGregor was offered was sufficiently inferior to constitute an adverse action. Even though her salary would have remained the same, MacGregor would have lost her supervisory and budgetary responsibilities, likely diminishing her career prospects both within and outside the company. Moreover, MacGregor's concerns that the position was a dead-end job were

confirmed when the company deemed the position non-feasible one year after she had rejected it.

Prior decisions of this Circuit rejecting workplace discrimination claims can be factually distinguished. In Smith v. Goodyear Tire & Rubber Co., 895 F.2d 467 (8th Cir. 1990), the trial court's finding of age discrimination was reversed where the employee was one of approximately 25 sales managers offered jobs as salespersons in different cities when their positions had been eliminated. Id. at 467. In contrast to the employer's age-neutral method of choosing which sales managers to eliminate based on sales volume in Goodyear, MacGregor has presented sufficient evidence from which a jury could infer a plan to reduce the number of women in marketing. Moreover, the employee in Goodyear rejected the alternate offer because he feared he would have difficulty selling his home because of a downturn in the economy, whereas MacGregor rejected the offer for reasons specific to the position. Id. at 470. Therefore, it was reasonable for her to expect Mallinckrodt to respond with a better offer. In Gartman v. Gencorp, Inc., 120 F.3d 127 (8th Cir. 1997), this Circuit reversed the district court's denial of the employer's motion for judgment as a matter of law involving a situation in which a female employee rejected an alternative offer. The plaintiff's position would have essentially remained the same in Gartman as she would have had to relocate but would also have retained her title, salary, and benefits. Id. at 129-30. In rejecting the offer, she cited personal and family reasons, which the employer could not have been expected to remedy. Id. at 130. In contrast, MacGregor rejected the company's offer solely because of its specific terms, allowing both parties to expect that negotiations would continue.

Accordingly, we hold that a jury could have reasonably found that MacGregor suffered an adverse action and could have reasonably inferred a discriminatory

motive, and reject Mallinckrodt's argument that MacGregor must prove constructive discharge.[4]

**B. The District Court's Jury Instructions Do Not Mandate a New Trial**

Mallinckrodt claims the district court erred in denying its motion for a new trial based on ambiguous jury instructions. This Court reviews both jury instructions and the denial of a new trial for abuse of discretion. Campos, 289 F.3d at 551-52 (internal citation omitted). Jury instructions must fairly and adequately present the jury with the issues of law and fact appropriate to the case. Id. at 551 (internal citation omitted). A new trial is appropriate where the verdict is against the clear weight of the evidence, clearly excessive, or the result of passion or prejudice. Ouachita Nat'l Bank v. Tosco Corp., 686 F.2d 1291, 1294 (8th Cir. 1982) (internal citations omitted).

Mallinckrodt argues that Jury Instruction No. 17 offered the jury "a smorgasbord of adverse actions from which to find liability . . . ."[5] Order at 13.

[4]Mallinckrodt contends that MacGregor's failure to prove constructive discharge bars the district court's award of backpay, lost stock options, and punitive damages. Our rejection of Mallinckrodt's underlying argument renders that position moot.

[5] Jury Instruction No. 17 reads in full:

> Discharge and constructive discharge are not the only types of adverse employment action for which plaintiff may recover.
>
> As used in these instructions, adverse employment action refers to tangible changes in duties or working conditions that result in a material employment disadvantage. It includes actions such as termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, or disadvantage or interfere with the employee's ability to do his or her job. It may also include a transfer to a less desirable position because that position afforded little opportunity for salary increases or advancement. It does not include mere inconvenience, an alteration of job responsibilities or loss of status and

Constructive discharge is, however, only one method of showing an adverse action. See Kerns, 178 F.3d at 1016 (internal citations omitted). Therefore, an independent showing of constructive discharge is not necessary for the court to find an adverse action. See id. All of the adverse actions listed in Jury Instruction No. 17 correctly cite decisions of this Circuit. Jury Instruction No. 17 also cautions the jury properly: "[Adverse action] does not include mere inconvenience, an alteration of job responsibilities or loss of status and prestige when salary and position remain the same." Nothing in this case renders this standard Eighth Circuit jury instruction inappropriate.

Mallinckrodt also erroneously contends that the special form verdict amounted to a general verdict. Where a general verdict makes it impossible to distinguish multiple claims, some of which should not have been questions for the jury, a new trial is warranted. See Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co., 370 U.S. 19, 29-30 (1962). The fact that the parties disagreed on whether the adverse action element was based on direct or constructive discharge does not amount to multiple claims of liability. MacGregor presented only one claim: gender discrimination. She did not present evidence of a constructive discharge. Because there is no confusion as to which adverse action the jury used to find liability, whether there was a general form verdict is irrelevant.

Accordingly, because the instruction and form properly allowed the jury to choose from multiple forms of adverse action, all of which were supported by the evidence, there was no error and the motion was properly denied.

---

prestige when salary and position remain the same.

**C. The District Court Properly Entered the Jury's Award of Punitive Damages**

Mallinckrodt charges as error the district court's denial of its motions for judgment as a matter of law, for remittitur, and for a new trial on punitive damages. Mallinckrodt claims that punitive damages are unsupported by the evidence and grossly excessive. It further argues that the district court erred in taking judicial notice of the company's size when imposing the statutory cap on punitive damages. For the following reasons, we reject these contentions and affirm the district court's decision on the issue of punitive damages.

*1. Punitive Damages Are Supported by the Evidence*

Mallinckrodt alleges that the punitive damages are not supported by the evidence and that the district court should have accordingly granted its motion for judgment as a matter of law. This Court reviews denial of a motion for judgment as a matter of law *de novo*. See Webner v. Titan Distribution Inc., 267 F.3d 828, 833 (8th Cir. 2001) (internal citation omitted). We do, however, view the evidence in the light most favorable to the jury verdict. See Gartman, 120 F.3d at 129 (internal citation omitted).

Punitive damages are appropriate against an employer that has discriminated "with malice or with reckless indifference to the [employee's] federally protected rights . . . ." 42 U.S.C. § 1981a(b)(1). The punitive damages inquiry requires a showing of the requisite malice or reckless indifference by certain individuals as well as a showing that the employer may be held liable for the conduct of those individuals. See Ogden v. Wax Works, Inc., 214 F.3d 999, 1008 (8th Cir. 2000) (citing Kolstad v. American Dental Ass'n, 527 U.S. 526, 539 (1999)). "'Reckless indifference' means that the defendant had 'knowledge that it may be acting in violation of federal law.'" Walsh v. Nat'l Computer Sys., Inc., 332 F.3d 1150, 1161 (8th Cir. 2003) (quoting Kolstad, 527 U.S. at 535). An employer can be held

responsible for the reckless indifference of discriminatory actions taken by those serving in a managerial capacity. Id. (internal citation omitted).

Here, Stover was acting in a managerial capacity when he made the discriminatory decision to hire a less qualified male instead of MacGregor. As Human Resources Manager, Cronin was also acting in a managerial capacity when she failed to respond adequately to MacGregor's complaints. Such behavior sufficiently shows apathy by higher-level executives toward protecting employees' Title VII rights.

Mallinckrodt further argues that the company's corporate anti-discrimination policies require vacating the punitive damages award. A corporation may avoid punitive damages by showing that it made good faith efforts to comply with Title VII after the discriminatory conduct. See Kolstad, 527 U.S. at 545-46 (internal citation omitted). However, where an employer discriminates in contravention of its own policies, the existence of those policies does not allow the employer to escape punitive damages. See Madison v. IBP, Inc., 257 F.3d 780, 795-96 (8th Cir. 2001), *overruled in non-relevant part by* Jones v. R. R. Donnelley & Sons Co., 124 S. Ct. 1836, 158 L. Ed. 645 (2004). MacGregor properly invoked the company's anti-discrimination policy by directly speaking to Cronin, unlike the plaintiff in Varner v. Nat'l Super Markets, Inc., 94 F.3d 1209 (8th Cir. 1996), who complained to her fiancé and coworker who then in turn reported the incident to her employer. Id. at 1211. Only minimal investigations were conducted after both of MacGregor's complaints. In response to her complaint about Stover's "too many women at the table" comment, Cronin only warned Stover that his remark could be taken out of context. Such a response with no form of reprimand effectively allows managers to continue discriminatory remarks as long as they remain discrete. In addition, the general failure to communicate the results of investigations to complainants may discourage similarly-situated victims from making additional complaints about civil rights violations.

In a recent decision relied upon by Mallinckrodt, this Circuit upheld liability for equal pay and discrimination claims but vacated punitive damages. See Lawrence v. CNF Transp., Inc., 340 F.3d 486 (8th Cir. 2003). Because there was no showing of a Title VII violation until after the plaintiff had resigned and had been replaced by a male at a higher salary, there was no company investigation and, thus, no showing of reckless indifference. See id. at 490 Moreover, the finding of discrimination in Lawrence was based on a supervisor's generally sexist comments. See id. at 496. Stover's comments, on the other hand, indicated a specific plan to reduce the proportion of females in his restructured team. Both his refusal to hire another female and Cronin's failure to reprimand him corroborated this intent. Here, where a jury could reasonably find that Stover had shown a clear intent to reduce the number of women, the evidence equals or surpasses the level of discrimination in Ross v. Kansas City Power & Light Co., 293 F.3d 1041 (8th Cir. 2001). In Ross, this Circuit affirmed submission of punitive damages to a jury where the employer "*occasionally* took 'special efforts' on behalf of [under-qualified] white applicants" and "*may* have passed over qualified internal black candidates in favor of new college graduates who were white." Id. at 1048 (emphasis added).

The company's lax anti-discrimination policies were insufficient to keep the issue of punitive damages from the jury. With all inferences in favor of the jury verdict, we find that Mallinckrodt's behavior was sufficiently indifferent toward MacGregor's rights so as to support the jury's punitive damage award.

*2. Punitive Damages Are Not Excessive or Unconstitutional*

Mallinckrodt alleges that the punitive damages are excessive and unconstitutional and that the district court should have thus granted its motions for remittitur or for a new trial. We review the district court's denial of motions for a new trial or remittitur for manifest abuse of discretion or a verdict that is so grossly excessive as to shock the conscience. Foster v. Time Warner Entm't Co., L.P., 250

F.3d 1189, 1194 (8th Cir. 2001) (internal citation omitted). However, we review *de novo* the constitutionality of an award of punitive damages. Ross, 293 F.3d at 1048 (internal citations omitted).

Whether an award of punitive damages is reasonable depends on (1) the degree of reprehensibility of the defendant's conduct; (2) the proportional relationship between the plaintiff's actual harm and the award; and (3) the civil penalties for similar misconduct. Id. at 1048-49 (internal citation omitted).

Mallinckrodt's conduct was sufficiently reprehensible to justify the punitive damages award. In State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003), the Supreme Court enumerated factors for evaluating the reprehensibility of a defendant's conduct: whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." Id., 538 U.S. at 419 (citing BMW of North America, Inc. v. Gore, 517 U.S. 559, 576-77 (1996)). Mallinckrodt's discrimination was not an isolated incident. The jury found that Stover had promoted a less qualified male instead of MacGregor and refused to hire another female manager in marketing. Company investigations did nothing to prevent those instances of discrimination or repetition of such conduct. Stover's two comments could be reasonably construed to be intentional and not accidental.

We must also consider whether damages beyond compensatory damages are necessary to achieve punishment or deterrence. Id. at 419 (internal citation omitted). Given Stover's actions and comments and Mallinckrodt's failure to remedy the discriminatory effects, a jury could conclude that punitive damages were necessary to prevent such discrimination from occurring in the future.

We also find that the punitive damages were constitutionally proportional to the plaintiff's harm. Mallinckrodt argues that the reduced $300,000 punitive damages are excessive but compares that amount only to the single dollar awarded for other damages. For purposes of determining whether an award of punitive damages is reasonable, punitive damages are compared to actual harm, including economic and compensatory damages. See Salitros v. Chrysler Corp., 306 F.3d 562, 576 (8th Cir. 2002). Thus, the appropriate basis for comparison is $170,803, which consists compensatory damages of $1 as well as lost wages and benefits of $68,802, and lost stock options of $102,000. The relevant ratio of punitive damages to actual harm is approximately 2:1. Analyzing the relationship between punitive damages to actual harm should not be reduced to a simple mathematical comparison. BMW, 517 U.S. at 582 (internal citation omitted). That said, prior decisions clearly support such a ratio. See, e.g., Ross, 293 F.3d at 1049 (reducing punitive damages ratio from 20:1 to 10:1); Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 577-78 (8th Cir. 1997) (reducing punitive damages ratio from 140:1 to 10:1); Kimbrough v. Loma Linda Dev., Inc., 183 F.3d 782, 785 (8th Cir. 1999) (affirming a punitive damages ratio of 10:1); Ogden, 214 F.3d at 1011 (rejecting appellant's argument that a 6.5:1 punitive damages ratio was excessive). Accordingly, we hold that the district court's award of punitive damages was not excessive.

*3. District Court Did Not Err in Taking Judicial Notice of Mallinckrodt's Size*

Mallinckrodt's final punitive damages argument relates to the statutory cap imposed by the district court. 42 U.S.C. § 1981a(b)(3) limits punitive and compensatory damages based on the employer's headcount[6]. Mallinckrodt argues that the district court erred in taking judicial notice of the company's true size – 13,000 employees in the United States at the time of trial – rather than basing the cap

---

[6] The limit is $200,000 if employees number between 201 and 500 and $300,000 if the number of employees exceeds 500. The district court imposed the $300,000 limit.

solely on the record, which reflected only the 300 employees at the Plymouth, Minnesota plant.

This Court may take judicial notice of a fact not in the record only where the fact is "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Facts capable of "ready determination" must be "widely available." 21 CHARLES ALAN WRIGHT AND KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5106, at 500 (1977). We review the district court's taking of judicial notice for abuse of discretion.

As the district court properly noted, the second prong allows judicial notice because the size is readily obtainable from company or tax records. That the number of employees is not common knowledge does not prevent the fact from being widely available and thus subject to judicial notice.

Moreover, Mallinckrodt does not argue that the company had fewer than 500 employees or that the headcount of only the Plymouth, Minnesota facility is relevant for imposing the statutory cap. "No substantial issue concerning the propriety of judicial notice is raised in this Court in the absence of a dispute over the fact judicially noticed . . . ." In re Phillips, 593 F.2d 356, 358 (8th Cir. 1979). We find no abuse of discretion where the judicially noticed fact was not actually challenged nor capable of a reasonable challenge.

Mallinckrodt argues that judicial notice of facts on which the plaintiff has the burden of proof is inappropriate. See United States v. Wessels, 12 F.3d 746, 754 (8th Cir. 1993) (remanding sentencing decision after finding the lower court had judicially noticed which variant of a specific drug the defendant was trafficking and consequently extended the defendant's sentence). Unlike in Wessels, Mallinckrodt's

size could be determined independently of MacGregor's case through widely available records.

Because the damages were supported by the evidence and not excessive, and because there was no abuse of discretion in the district court's taking of judicial notice, we affirm the district court's award of punitive damages.

**D. The District Court Properly Denied Mallinckrodt's Motion for a New Trial Based on Evidentiary Error**

Finally, Mallinckrodt argues that the $102,000 award for lost stock options was improper because MacGregor's failure to disclose the claim in discovery prevented the company from retaining an expert. It therefore contends that the district court's denial of its motion for a new trial was error. This Court reviews the denial of a new trial for abuse of discretion. Campos, 289 F.3d at 551-52. We review the district court's admission of evidence and its discovery decisions under the same standard. Keefer v. Provident Life & Accident Ins. Co., 238 F.3d 937, 940 (8th Cir. 2000) (internal citation omitted).

Mallinckrodt argues that MacGregor's failure to answer discovery requests regarding damages claims requires a Rule 37 sanction against her to bar the admission of evidence on that issue. Imposition of discovery sanctions requires "an order compelling discovery, a willful violation of that order, and prejudice to the other party." Chrysler Corp. v. Carey, 186 F.3d 1016, 1019 (8th Cir. 1999) (internal citation omitted). Mallinckrodt never requested the district court to compel production of evidence relating to the stock option claim.

Such failure to seek judicial intervention likely occurred because MacGregor had no worthwhile knowledge to impart to Mallinckrodt. During discovery, MacGregor had made clear both her intention to seek the stock options as damages

as well as the amount of those damages. As the holder of those stock options, Mallinckrodt had virtually all information concerning the options, and it is unlikely that MacGregor would have provided any new insight on the issue. Thus, because MacGregor's omissions concerning the stock options were not so critical as to prompt Mallinckrodt to seek the district court's involvement in the discovery process, they should not bar MacGregor from introducing evidence on that issue.

Mallinckrodt contends that MacGregor's discovery omissions prevented it from finding a suitable expert, but it appears that an expert would have been of little value. Imposition of a sanction is proper only if just and expressly related to the particular claim. Keefer, 238 F.3d at 941 (internal citation omitted). Mallinckrodt argues that a new trial would allow it the opportunity to present an expert who could testify on the speculative nature of stock options. However, because the parties stipulated the value of the options at the outset of the trial, the testimony of such an expert would have been irrelevant. Accordingly, we hold that sanctions against MacGregor are inappropriate and that Mallinckrodt's motion for judgment as a matter of law was properly denied.

## III. Conclusion

For the foregoing reasons, the order of the district court denying Mallinckrodt's motions for remittitur, new trial, and judgment as a matter of law is AFFIRMED.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

MICHAEL E. GANS
Clerk of Court

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

RECEIVED
BY U.S. MAIL

July 23, 2004

2004 JUL 26 AM 9:45

CLERK, U.S. DIST COURT
MINNEAPOLIS, MN

Mr. Richard Sletten
Clerk
U.S. DISTRICT COURT, MINNESOTA
202 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415

Re: 03-3166 Ann MacGregor vs. Mallinckrodt, Inc.

Dear Clerk:

The mandate of this Court is being sent to the clerk of the district court, together with a receipt. The clerk of the district court is requested to sign, date, and return the receipt to this office.

Any district court records in this court's possession will be returned shortly.

(5175-010199)

Sincerely,

Michael E. Gans
Michael E. Gans
Clerk of Court

dms

Enclosure

(LETTER FOR INFORMATIONAL PURPOSES ONLY)

---

cc: Honorable David S. Doty
Steve G. Heikens
David J. Duddleston
Natalie Wyatt-Brown
Mary L. Senkbeil

District Court/Agency Case Number(s): CIV 01-828 DSD/SRN